ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | : Civil Action No. |
| EFS, LLC, FREEDOM FIDELITY, LLC, JAMES N. PRATT, SP&V, LLC, and TIMOTHY V. COFFIN, | : 3-06CV0793-M |
| Defendants. | : |

# COMPLAINT

Plaintiff Securities and Exchange Commission files this suit against EFS, LLC, Freedom Fidelity, LLC, James N. Pratt, SP&V, LLC, and Timothy V. Coffin (collectively, "Defendants"), and alleges as follows:

## SUMMARY

1.  Defendants are engaged in an unregistered and fraudulent securities offering that lures investors with false promises of astronomical investment returns. Since September 2004, Defendants, collectively, have fraudulently raised approximately $1.06 million from at least 85 investors. The fraud is apparently ongoing; the Defendants have taken money from investors as recently as April 25, 2006.

2.  Defendants Pratt and Coffin are orchestrating the scheme through business entities they control, including EFS, Freedom Fidelity, and SP&V.

3.  The Defendants are operating what is commonly known as a "Prime Bank" or "High Yield Investment" scheme. Almost every representation made to investors about the nature

and terms of the investment is a fabrication. Investors are led to believe that phenomenal investment returns will be achieved through the trading of "bank instruments." In reality, the trading program does not exist. Consequently, the Defendants have failed to generate the promised returns, and have failed to offer any explanation concerning the disposition of approximately one-third of the investors' funds.

4. The Commission, in the interest of protecting the public from further fraudulent activities, brings this action seeking an order enjoining preliminarily and permanently the Defendants from further violations of Sections 5(a), 5(b) and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] ("Exchange Act"), and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Commission also seeks orders requiring the Defendants to pay civil monetary penalties and to disgorge all ill-gotten gains, plus prejudgment interest thereon.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants have, directly and indirectly, made use of the means or instrumentalities of interstate commerce and/or the mails in connection with the transactions described in this Complaint.

6. Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts and transactions described herein took place in the Northern District of Texas.

## DEFENDANTS

7. **James N. Pratt**, 65, of Carrolton, Texas, is President and a manager of EFS and Freedom Fidelity. Pratt is a Texas-registered insurance agent. Pratt operates EFS and Freedom

Fidelity from the same address as his insurance business. In July 2005, Pratt and his company EFS were ordered by the California Department of Corporations to "desist-and-refrain" from violating the securities registration and antifraud provisions of California in connection with its prime bank offering. Pratt was served with the Order on or about July 14, 2005 by certified mail.

8. **EFS, LLC**, is a Texas limited liability company formed on October 12, 2004.

9. **Freedom Fidelity, LLC**, is a Texas limited liability company formed on January 27, 2006.

10. **Timothy V. Coffin**, 56, of Huntington Beach, California, is an attorney, previously licensed to practice law in California. He holds himself out as the CEO and President of SP&V. From 1987 to 2002, Coffin was a licensed, registered representative of various broker-dealers.

11. **SP&V, LLC**, is believed to be a limited liability company controlled by Coffin and located in Huntington Beach, California, at Coffin's residential address.

## THE FRAUDULENT SCHEME

### A. *The Investment*

12. The Defendants' investment offering is a classic, and illegal, "Prime Bank" or "High Yield Investment" scheme, in which investors are promised phenomenal investment returns through the trading of bank instruments issued by the "Top 25 World Banks." In reality, the trading program does not exist.

13. Pratt started the prime bank offering under the name "EFS Executive Loan Program" in September 2004. To obtain investor funds, Pratt solicited investors to "loan" funds to EFS and, in return, investors were issued promissory notes with an interest rate of "not less than 10% per annum." However, both offering documents used by Pratt and EFS contain projections of much higher returns. The initial offering document, dated October 2004, projects

returns of "10%, compounding monthly." The second offering document projected monthly returns of between 3% and 5%, depending on the amounts invested. The initial offering document also represented that the investors' principal is *guaranteed* by the escrow account of a Dallas-based attorney.

14. Pratt solicited investors through personal contact, written promotional materials, and by paying a 5% referral fee to existing investors who recruit new investors.

15. Pratt has admitted that in October 2004, he invested approximately $95,000 of investor funds in a purported Malaysian bank trading program. According to Pratt, this investment resulted in the loss of the entire $95,000.

16. In December 2005, rather than informing investors that their funds had been lost, Pratt sent EFS investors a letter stating that a "hold" had been placed on their invested funds, supposedly the result of a Malaysian bank failure. Pratt offered investors the opportunity to switch their investment to a new program, which offered a 5% monthly return. The letter further stated that the return "will be assured (sic) with The Bank Instrument provided by our Bank and the Licensed Brokerage firm we work through."

### B. *The Freedom Fidelity Offering*

17. By at least late March 2006, Defendant Coffin and his business entity, SP&V, joined Pratt in orchestrating and conducting a new offering under the name, Freedom Fidelity, a business entity controlled by Pratt. Coffin, the purported "sponsor" of this investment program, participated in preparing the program's offering materials.

18. In March 2006, Freedom Fidelity made a Form D filing with the SEC, which claimed the Regulation D, Rule 506 registration safe harbor. According to the filing, the open-ended offering seeks to raise a maximum of $20,000,000, from accredited and non-accredited

investors. The Form D filing included a sample joint participating agreement between Freedom Fidelity and its investors, a sample client promissory note substantially identical to the EFS promissory note, and a summary prospectus.

19. The joint participating agreement and summary prospectus contain the following representations:

- All client funds will be placed into Freedom Fidelity Master Account at Bank of America and can only be used to acquire a Bank Instrument that is then placed into a private placement investment program.

- Client funds are used to purchase bank instruments issued by investment grade financial institutions.

- The funds are secured by a promissory note issued by Freedom Fidelity to the client and by bank instruments that have been purchased using client funds.

- The Bank Instruments are issued by the Top 25 World Banks, such as Citibank, Bank of America, Wells Fargo or an investment grade bank institution.

- Trade profits will be distributed within 30 to 45 banking days.

- Clients will receive 12% of invested funds per month on a simple interest basis (there is no compounding).

- The investment program, as with any investment, has risk, but the risk has been minimized by the client's investment funds being either left in cash or used to purchase investment grade bank instruments along with Freedom Fidelity issuing a Promissory Note to the Client for the investment amount.

20. On March 20, 2006, Freedom Fidelity entered into a joint venture agreement with SP&V. Under the agreement, Freedom Fidelity was to provide 100% of investors' funds to

SP&V to "purchase bank instruments issued by the Top 25 World Banks; such as Citibank, Bank of America, Wells Fargo or an investment grade bank institution." The bank instruments were to be placed into "a private placement investment program" that would provide a monthly return of 28% to Freedom Fidelity, based upon the total of investor funds provided to SP&V."

21. The Freedom Fidelity program, as offered to investors by Pratt and Coffin, was to pay monthly interest of 12%. Investors were told that their funds would be pooled with the funds of other investors and then invested in bank trading programs involving the "Top 25 Banks." Pratt explained to investors that the pooling was necessary to meet the trading programs' requirement that a minimum of $10 million to $100 million be available for each trade.

22. According to information provided to investors, their funds would be *insured* by the bank instruments that were to be purchased. In fact, at an April 2006 luncheon in Dallas, at which Pratt and Coffin solicited investors, Coffin told investors that their principal would be *protected* because it would always be in either "cash or an investment-grade bank instrument."

23. Neither the EFS nor the Freedom Fidelity securities offerings were registered with the Commission.

***C. Use of Investor Funds***

24. Defendants have raised at least $1.06 million from investors since September 2004.

25. Between March 21, 2006 and April 17, 2006, Pratt transferred $700,000 of investor funds, purportedly for use in a trading program, from a Dallas-area bank account to an SP&V account in California, controlled by Coffin. This represented the first time, with the exception of the failed Malaysian investment, that Pratt sought to commit EFS and Freedom

Fidelity investor funds to a trading program. The funds sent to the SP&V account included funds from investors in both the EFS and Freedom Fidelity programs.

26. Coffin has admitted receiving approximately $700,000 from Pratt, claiming that the funds have been, and are currently maintained in an SP&V bank account in California. Coffin claimed that he intends to invest the funds during the first week of May 2006.

27. Pratt has refused to advise the Commission staff regarding the disposition of the remainder of the funds that the Defendants have obtained from investors.

### D. Material Misrepresentations and Omissions

28. The Defendants' investment program is completely bogus. The offer and sale of the Prime Bank investment, described above, is rife with false and misleading statements and failure to disclose material facts.

29. The Defendants, both orally and through promotional literature, entice investors with the projections of astronomical annual investment returns of up to 144%. This representation is coupled with the claim that investors' funds are protected and secure. The Defendants have no reasonable basis for making these projections. The Defendants do not have a trading program, or access to a trading program, that can generate the returns promised to investors.

30. The Defendants use fraudulent and falsified written materials in connection with their scheme. For example, since at least December, 2004, Pratt has provided investors with bogus monthly account statements falsely reflecting that their one-year promissory notes have earned between 3% and 10% monthly. In truth, investors have not earned any profits from the trading of bank instruments.

31. The representation contained in the initial offering memorandum that the investors' principal is guaranteed by the escrow account of a Dallas-based attorney, is false.

32. The Defendants failed to disclose to prospective investors that Pratt and EFS had invested approximately $95,000 of investor funds in a purported bank trading program that was orchestrated from Malaysia, and that this investment not only failed to generate any return, it also resulted in the loss of the $95,000 principal amount.

33. The Defendants failed to disclose to prospective investors that Freedom Fidelity was to receive 28% monthly interest on investors' funds, pursuant to the terms of the agreement between Freedom Fidelity and SP&V.

34. Contrary to the representations made by Pratt in his letter to investors, neither EFS nor Freedom Fidelity worked through a "Licensed Brokerage firm."

35. The Defendants failed to disclose to prospective investors that Coffin previously had lost substantial amounts of investor funds in connection with at least one other bank trading program.

36. Pratt's representation to EFS investors that a "hold" had been placed on their invested funds, supposedly as the result of a Malaysian bank failure, was false and misleading, and was an attempt to lull investors from taking appropriate action against Pratt and EFS.

37. The Defendants failed to disclose to prospective investors that Pratt and EFS were ordered by the California Department of Corporations to "desist-and-refrain" from violating the registration and antifraud provisions of California in connection with the prime bank offering.

**FIRST CLAIM**
**Violations of Section 17(a) of the Securities Act**

38. Plaintiff Commission repeats and incorporates paragraphs 1 through 37 of this Complaint by reference as if set forth *verbatim*.

39. The Defendants, directly or indirectly, singly or in concert with others, in connection with the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

40. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 37 above.

41. With respect to violations of Section 17(a)(1) of the Securities Act, the Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth. With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, the Defendants were negligent in their actions regarding the representations and omissions alleged herein.

42. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

43. Plaintiff Commission repeats and incorporates paragraphs 1 through 37 of this Complaint by reference as if set forth *verbatim*.

44. The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

45. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 37 above.

46. The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

47. By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM
### Violations of Section 5(a) and 5(c) of the Securities Act

48.  Plaintiff Commission repeats and incorporates paragraphs 1 through 37 of this Complaint by reference as if set forth *verbatim*.

49.  Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

50.  As alleged in paragraphs 1 through 37, the investments described in detail herein, have been offered and sold to the public through a general solicitation of investors. No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.

51.  By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## RELIEF REQUESTED

52.  Plaintiff respectfully requests that this Court:

  (a) Temporarily, preliminarily and permanently enjoin all Defendants from violating Sections 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

  (b) Order the Defendants to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus prejudgment interest on that amount.

  (c) Order civil penalties against the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

  (d) Such further relief as this Court may deem just and proper.

Dated: May 3, 2006        Respectfully submitted,

*/s/ Steve Korotash*
STEVE KOROTASH
Oklahoma Bar No. 5102

SECURITIES & EXCHANGE COMMISSION
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-6490
FAX: (817) 978-4927
korotashs@sec.gov

Of Counsel:

Stephen Webster, Texas Bar No. 21053700
Robert Hannan, Texas Bar No. 08924700
Shoshanna Thoma-Isgur, Texas Bar No. 24008149
Securities and Exchange Commission
Fort Worth District Office
801 Cherry Street, 19th Floor
Fort Worth, TX 76102-6882

Case 3:06-cv-00793-M   Document 1   Filed 05/03/06   Page 13 of 13   PageID 13

**ORIGINAL**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**
UNITED STATES SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
EFS, LLC, FREEDOM FIDELITY, LLC, JAMES N. PRATT, SP&V, LLC, AND TIMOTHY V. COFFIN, DEFENDANTS.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Stephen J. Korotash
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
(817) 978-6490

ATTORNEYS (IF KNOWN)

**3-06CV0793-M**

RECEIVED MAY - 3 2006
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**TORTS — PERSONAL INJURY**
- ☐ 362 Personal Injury - Med Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R R & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 156
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copy rights
- ☐ 830 Patient
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395FF)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 810 Selective Service
- ☒ 850 Securities Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (Specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**VI. CAUSE OF ACTION** CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY):
Brief Description of cause: Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] ("Exchange Act"), and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint: JURY DEMAND ☐ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):   JUDGE _____   DOCKET NUMBER _____

DATE 5/3/06   SIGNATURE OF ATTORNEY OF RECORD /s/ Korotash

**FOR OFFICE USE ONLY**
Receipt # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____