IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHRISTOPHER E. KIRKPATRICK, § <br> as the RECEIVER FOR SUNRAY OIL § <br> COMPANY, INC., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> § <br> JASMINE INC. and § <br> JIMMY GRAY a/k/a JAMES GRAY § <br> § <br> Defendant. § | Civil Action No. 3:06-CV-0793-BH <br> Consolidated with <br> Civil Action No. 3:06-CV-1097-R |

### MEMORANDUM OPINION AND ORDER

By order of reassignment filed August 23, 2011, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court is *Receiver's Motion for Final Summary Judgment*, filed December 16, 2011 (doc. 212). Based on the relevant filings, evidence, and applicable law, the motion is **DENIED**.

### I. BACKGROUND

**A. Factual Background**

This is a consolidated action prosecuted by the Securities and Exchange Commission (SEC) against a number of individuals and entities that involves, among other things, a scheme to sell allegedly unregistered and fraudulent oil and gas investments to unsuspecting investors. In January 2005, Sunray Oil Company, Inc. (Sunray), controlled by Larry Stiles, began promising investors through its website that they would "make a fortune" by investing in Sunray's "proven" oil wells. (Mot. App. at 24-25.) Sunray then sold limited partnership interests in Abilene Oil and Gas, L.P. (the Abilene Offering), also controlled by Stiles, with the stated purpose of acquiring an interest in

certain oil and gas properties in Taylor County, Texas. (*Id.* at 25.) The documentation used to attract investors contained misrepresentations and omissions. (*Id.*) Among other things, Sunray's website represented that Sunray had 50 years of experience as an oil producer, although its first well was drilled in 2005 and turned out to be a dry hole. (*Id.*) The Abilene Offering partnership agreement provided that all funds raised would be kept in a separate account and used solely for the benefit of the Abilene partnership, but no such account was ever created. (*Id.*) Instead, investor funds were deposited directly into Sunray's accounts and were used to fund separate Sunray ventures and the lifestyle and personal expenses of Stiles. (*Id.*) Although the particular time period during which the investor funds were raised is unclear, Sunray raised approximately $1.14 million from at least 52 different investors through the Abilene Offering. (*Id.*)

On April 19, 2005, Sunray executed a letter of intent to purchase 80 acres of oil and gas leases in Oklahoma from Jasmine, Inc. (Jasmine), at a price of $750,000.00. (Resp. App., Ex. 1.) The letter stated that Sunray would pay $10,000.00 at the execution of the letter and an additional $15,000.00 at the execution of the purchase and sales agreement. (*Id.*) The letter set the closing date as 45 days from its execution and allowed Sunray to pay $25,000.00 for an additional 30 days to close. (*Id.*) On June 7, 2005, Jimmy Gray, acting on behalf of Jasmine, gave Sunray an additional 10 days to close, at the end of which Sunray would have to pay $25,000.00 for an additional 30 days to close. (*Id.*) On or about July 5, 2005, Sunray allegedly entered into a written contract to purchase 38.85 % of certain oil and gas leases located in Garvin County, Oklahoma, from Jasmine. (Mot. App. at 26-27.) Between April and August 2005, Sunray paid Jasmine $330,000.00. (*Id.*) Jasmine never transferred any oil and gas interests or returned any funds to Sunray. (*Id.*)

**B. Procedural History**

On June 21, 2006, the SEC filed an action, styled *Securities and Exchange Commission v. Sunray Oil Company, et al.*, No. 3:06-CV-1097-M (Sunray Action), against Sunray, Abilene Oil and Gas, L.P. (Abilene), and Stiles, for alleged violations of §§ 5(a), 5(c), and 17(a) of the Securities Act, § 10(b) of the Exchange Act, and Rule 10b-5. (Mot. App. at 24-25.) The SEC joined J&L Drilling Co. (J&L), another entity controlled by Stiles, as a relief defendant. (*Id.*) On June 22, 2006, the district court appointed Christopher E. Kirkpatrick as a receiver (the Receiver) for Sunray, Abilene, Stiles, and J&L. (*Id.* at 25.) The court authorized the Receiver to collect, receive, and take exclusive custody and control of certain assets and records of the defendants and the relief defendant, and to institute proceedings necessary and proper for the protection and collection of the receivership assets. (*Id.* at 25-26.) The order also authorized the Receiver "to institute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or funds traceable to investor monies." (doc. 148-2 at 6.) On September 1, 2006, the Sunray Action was consolidated with the original suit, *Securities and Exchange Commission v. EFS, LLC, et al.*, No. 3:06-CV-793-M. (Mot. App. at 24-25.)

On August 28, 2009, after learning about Sunray's contract with and payments to Jasmine, the Receiver sought and was granted leave to add Jasmine and Jimmy Gray a/k/a James Gray (Gray) (collectively, the Relief Defendants) to the consolidated action. (*Id.* at 26.) The Receiver filed a complaint adding the Relief Defendants on September 25, 2009. (*Id.*) The complaint sought the return of $330,000.00 in payments made from Sunray to Jasmine between April and August of 2005, plus interests and costs and fees associated with the recovery of the payment, based on equitable disgorgement and unjust enrichment theories. (*Id.*)

The Receiver now moves for summary judgment on the equitable disgorgement and/or unjust enrichment claims and requests an order requiring Jasmine and/or Gray to remit $330,000.00 plus prejudgment interest, and all fees and expenses by the Receiver in the amount of $70,929.00, to the Court's registry. With a timely filed response[1] and reply,[2] the motion is now ripe for determination.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show

---

[1] The Receiver objects to Gray's affidavit in support of the Relief Defendants' response to his motion for summary judgment. (*See* doc. 225.) Because, the outcome of the motion would be the same with or without its consideration, the Receiver's objections to the affidavit are overruled as moot.

[2] The appendix in support of the reply brief has not been considered because the Receiver did not seek leave to file new evidence, and allowing the evidence would deprive the Relief Defendants of a meaningful opportunity to respond. *See Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex.1991) (Fitzwater, J.) (noting that the local rules do not authorize the filing of evidence in support of a reply brief, and that "where a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them").

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

### III. ANALYSIS

The Receiver requests summary judgment against the Relief Defendants on the equitable disgorgement and/or unjust enrichment claims, arguing that they received $330,000.00 in ill-gotten funds and have no legitimate claim to those funds. (*See* Mot. Br. at 1-2.)

**A. Equitable Disgorgement**

The Receiver first argues that the defrauded investors are entitled to equitable disgorgement of ill-gotten gains received by the Relief Defendants. (*See id.* at 7-9.) A federal court may order equitable relief, such as disgorgement, from nominal or relief defendants who are not themselves accused of wrongdoing in a securities enforcement action where those persons or entities (1) have received ill-gotten funds and (2) do not have a legitimate claim to those funds. *See S.E.C. v. AmeriFirst Funding, Inc.*, 2008 WL 1959843, at *5 (N.D. Tex. May 5, 2008) (citations omitted); *see also Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009) (citing *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998)).

To meet his summary judgment burden with respect to the first requirement for equitable disgorgement, the Receiver presents his declaration as well as a transcript from a show-cause hearing from February 2011, at which both he and Gray testified. (*See* Mot. App. at 1-28.) The declaration states that Sunray began soliciting investors in January 2005 by promising them that they would make a fortune by investing in its proven oil wells, made misrepresentations and omissions in connection with the offer or sale of the limited partnership interests in Abilene, and ultimately raised $1.14 million from 52 different investors through the Abilene Offering. (*See id.* at 24-25.) The declaration and the hearing transcript show that Sunray transferred $330,000.00 to Jasmine between April and August of 2005. (*See id.* at 15-17, 26-27.) The declaration also states that the $330,000.00 are the proceeds of, or are traceable to the proceeds of, the unlawful activities of Sunray, were derived from Sunray investors through fraud, and were obtained as a result of fraudulent transfers. (*Id.* at 27.)

The latter statement is the only evidence presented by the Receiver to establish that the

$330,000.00 are the proceeds of, or are traceable to the proceeds of, the unlawful activities of Sunray, were derived from Sunray investors through fraud, or were obtained as a result of fraudulent transfers. "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citation omitted).[3] While the overlap in time between Sunray's alleged misrepresentations and its transfer of funds to Jasmine may lead to a reasonable inference that the funds were the proceeds of, or are traceable to the proceeds of, Sunray's unlawful activities, it may also justify a reasonable inference that they were not, especially since the time period during which the funds were raised is unclear. At the summary judgment stage, all justifiable inference must be drawn in the non-movant's favor. *See* Anderson, 477 U.S. at 2513; *accord Beard v. Banks*, 548 U.S. 521, 530 (2006). Given the lack of support for his conclusory assertion, the Receiver has failed to show that there is no genuine material fact issue as to whether the Relief Defendants are in receipt of ill-gotten funds.

The Receiver has also failed to show that there is no genuine issue of material fact with respect to the second requirement for equitable disgorgement — that the Relief Defendants do not have a legitimate claim to the $330,000.00 at issue. While there are no specific guidelines for what qualifies as a legitimate claim, some courts of appeals "have held that relief defendants who have provided some form of valuable consideration in good faith in return for proceeds of fraud are beyond the reach of the district court's disgorgement remedy." *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) (citing *SEC v. Cavanagh*, 155 F.3d 129, 136

---

[3]Although not in this specific context, the Fifth Circuit recently disapproved of a court's reliance on an insufficiently supported and highly conclusory affidavit filed by a receiver in an SEC action. *See Am. Cancer Soc'y v. Cook*, --- F.3d ----, 2012 WL 919674, at *3 (5th Cir. Mar. 20, 2012).

(2d Cir. 1998); *Janvey*, 588 F.3d at 834–35; *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191–92 (4th Cir. 2002)).  At least one court of appeals has held that the determination of whether or not a relief defendant is a good faith purchaser for value is a question of state law.  *See Walsh*, 618 F.3d at 226 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979) for the general rule that "property interests are created and defined by state law").

To meet the second requirement, the Receiver proffers testimony showing that the funds at issue were transferred from Sunray to Jasmine in April and August of 2005.  (Mot. App. at 15, 26.) He has failed, however, to show that all of the payments were made towards the purchase of oil and gas leases that Jasmine never transferred to Sunray.  Moreover, the evidence he presents in support of his motion is unclear as to the specific facts surrounding Sunray's payments to Jasmine.  For example, the Receiver's testimony refers to two written contracts from April 2005 and August 2005 while Gray's testimony acknowledges the execution of only one contract in April 2005 and claims that there was a verbal contract that he kept extending.  (*Id.* at 3-5, 13, 17, 26.)  Further, the April 2005 contract is only a letter of intent to purchase 80 acres of oil and gas leases in Garvin County, Oklahoma, which provides for payment of $10,000.00 upon its execution and an additional $15,000.00 at the execution of the purchase and sales agreement.  (Resp. App., Ex. 1.)  The letter also provides that the closing would take place 45 days from its execution and that Sunray could pay an additional $25,000.00 for an additional 30 days to close.  (*Id.*)  Viewing this evidence in the light most favorable to the Relief Defendants and drawing all justifiable inferences in their favor, as the Court must, they may have a legitimate claim to at least some of the funds transferred from Sunray. Finally, the second contract from July 5, 2005, which is supposedly a written contract to purchase 38.85 % of certain oil and gas leases in Oklahoma from Jasmine (*see* Mot. App. at 26-27), has not

been entered into evidence for purposes of the summary judgment motion.

Since there are genuine material fact issues with respect to the Receiver's claim for equitable disgorgement, he is not entitled to summary judgment on that claim.

**B. Unjust Enrichment**

The Receiver also seeks recovery of the $330,000.00 based on an unjust enrichment theory. (Mot. Br. at 5, 9-10.) "In Texas,[4] a plaintiff may recover under an unjust enrichment theory where a person has 'obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Patino v. Lawyers Title Ins. Corp.*, 2007 WL 4687748, at *7 (N.D. Tex. Jan. 11, 2007) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). "Unjust enrichment may occur where the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id.* (citing *In re Estate of Wallace*, 2006 WL 3611277, at *3 (Tex. App.—San Antonio Dec. 13, 2006, no pet.)) (internal quotation marks and parentheses omitted).

To meet his summary judgment burden on the unjust enrichment claim, the Receiver again argues that the Relief Defendants received $330,000.00 from Sunray for which they provided nothing in return, that they used the funds for Jasmine's general operating expenses, and that the funds are proceeds from the fraudulent scheme that forms the basis of the Sunray action. (*See* Mot. Br. at 9-10.) For the same reasons discussed with respect to the equitable disgorgement claim, there are genuine material fact issues with respect to the unjust enrichment claim and the Receiver is not entitled to summary judgment on that claim as well.

---

[4] The Receiver appears to be applying Texas law to the unjust enrichment claim, and the Relief Defendants do not dispute that Texas law applies.

## IV.  CONCLUSION

The Receiver's motion for summary judgment is **DENIED**.

**SO ORDERED** on this 2nd day of April, 2012.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE